**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ZACHARY J., ET AL. | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 19-652 |
| COLONIAL SCHOOL DISTRICT | : | |
| | : | |

**MEMORANDUM**

**YOUNGE, J.**                                                    **February 24, 2022**

This is an appeal from the due process decision of a Hearing Officer under the

Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400, *et seq.* ("IDEA"), and Section

504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504"). The issue before the

Hearing Officer, and that is now before this Court, is whether the school district (hereinafter

"Defendant") met its obligations to the student, Zachary J., under IDEA and Section 504.

Specifically, Zachary J.'s parents, acting as Plaintiffs, contend that Zachary was denied a free

appropriate public education during his time as a student within the Colonial School District.

Plaintiffs further seek reimbursement for the costs of an independent evaluation and other costs

that they incurred in relation to Zachary's education.

Pending before this Court are two cross-motions: (1) Plaintiffs' Motion for Judgment on

the Administrative Record ("Plfs.' Mot.," ECF No. 15), and (2) Defendant's Cross-Motion for

Judgment on the Administrative Record/Opposition to Plaintiff's Motion ("Def. Mot.," ECF 17).

The Court will first provide an overview of the IDEA and 504, the applicable standard of review

in administrative proceedings, and the factual background and procedural history of this case.

The Court will then summarize the Hearing Officer's findings of facts and conclusions of law.

Finally, the Court will analyze the merits of the parties' arguments raised in their respective

motions for judgment on the administrative record. In sum, Plaintiffs fail to establish that the decision rendered by the Hearing Officer lacked support in the administrative record. For the reasons set forth below, the Court will grant Defendant's motion and deny Plaintiffs' motion, thereby affirming the Hearing Officer's decision.[1]

## I.    IDEA AND SECTION 504 OVERVIEW

### A.    IDEA

In 1975, Congress provided that it would make funds available for state special education programs on the condition that states implement policies assuring a "free appropriate public education" (commonly known as a "FAPE") for all their disabled children. 20 U.S.C. § 1412(a)(1)(A); *see also C.H. v. Cape Henlopen Sch. Dist.*, 606 F.3d 59, 65 (3d Cir. 2010) ("Under the IDEA, a state receiving federal educational funding must provide children within that state a FAPE."). "Congress passed the law known today as the [IDEA] 'to assure that all children with disabilities have available to them . . . a [FAPE] which emphasizes special education and related services designed to meet their unique needs[.]'" *Susan N. v. Wilson Sch. Dist.*, 70 F.3d 751, 756 (3d Cir. 1995) (quoting 20 U.S.C. § 1400(c)).

"A school district provides a FAPE by designing and implementing an individualized instructional program set forth in an Individualized Education Plan ('IEP'), which must be reasonably calculated to enable the child to receive meaningful educational benefits in light of the student's intellectual potential." *P.P. v. W. Chester Area Sch. Dist.*, 585 F.3d 727, 729-30 (3d Cir. 2009) (internal quotes omitted); *see also Board of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 187-204 (1982). "Meaningful benefit" means that a student's

---

[1] The Court has considered the submissions made in support of and in opposition to the parties' respective motions, and finds this matter appropriate for resolution without oral argument.  Fed R. Civ. P. 78; L.R. 7.1(f).

program affords the student the opportunity for significant learning in light of his or her individual needs, not simply a *de minimis* or minimal education progress. *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist.*, 137 S. Ct. 988, 10000 (2017); *see also K.D. v. Downingtown Area Sch. Dist.*, 904 F.3d 248, 254 (3d Cir. 2018).

"An IEP is developed through collaboration between parents and school districts, and must include an assessment of the child's current education performance, must articulate measurable educational goals, and must specify the nature of the special services that the school will provide." *Perkiomen Valley Sch. Dist. v. S.D.*, 405 F. Supp. 3d 620, 624-25 (E.D. Pa. Sept. 24, 2019) (internal quotation marks and citation omitted). If "parents believe that the school district is not providing a FAPE for their child, they may unilaterally remove him from the school, enroll him in a different school, and seek tuition reimbursement for the cost of the alternative placement." *Munir v. Pottsville Area Sch. Dist.*, 723 F.3d 423, 426 (3d Cir. 2013).

The IDEA provides recourse in the form of an impartial administrative due process hearing. *See* 20 U.S.C. § 1415(f). In order to timely file a claim, a party must file a complaint "within 2 years of the date the parent or agency knew of should have known about the alleged action that forms the basis of the complaint." 20 U.S.C. § 1415(f)(3)(C). In determining when the statute of limitations begins, the "discovery rule" applies, meaning the limitations period "begins to run once the plaintiff did discover or a reasonably diligent plaintiff would have discovered the facts constituting the violation—whichever comes first." *G.L. v. Ligonier Valley Sch. Dist. Auth.*, 802 F.3d 601, 614 (3d Cir. 2015); *see also Solanco Sch. Dist. v. C.H.B.*, No. 15-02659, 2016 WL 4204129 *7 (E.D. Pa. Aug. 9, 2016). "If either party is aggrieved by the findings and decision reached after such a hearing, the IDEA further allows that party to file a civil suit in state or federal court." *S.D.*, 405 F. Supp. 3d at 625. "When parents challenge a school's provision of a

FAPE to a child, a reviewing court must (1) consider whether the school district complied with the IDEA's procedural requirements, and (2) determine whether the educational program was reasonably calculated to enable the child to receive educational benefits*." Mary T. v. Sch. Dist. of Phila.*, 575 F.3d 235, 249 (3d Cir. 2009).[2]

**B.      Section 504**

Section 504 also requires that Pennsylvania schools provide a FAPE to children with disabilities. *See* 34 C.F.R. § 104.33(a). Specifically, under Section 504 recipients of federal funds must "provide a [FAPE] to each qualified handicapped person who is in the recipient's jurisdiction, regardless of the nature or severity of the person's handicap." *Id.*; *see also A.B. v. Abington Sch. Dist.*, 440 F. Supp. 3d 428, 434 (E.D. Pa. 2020) ("As for Section 504, it and the IDEA do 'similar statutory work.'") (citing *P.P.*, 585 F.3d at 735). In other words, Section 504 "is parallel to the IDEA in its protection of disabled students: it protects the rights of disabled children by prohibiting discrimination against students on the basis of disability[.]" *P.P.*, 585 F.3d at 735; *see also* 34 C.F.R. § 104.4. A student with a disability who is otherwise qualified to participate in a school program, and was denied the benefits of the program or otherwise discriminated against, has been discriminated against in violation of Section 504. *See S.H. v. Lower Merion Sch. Dist.*, 729 F. 3d 248, 260 (3d Cir. 2013). A student who claims discrimination in violation of the obligations of Section 504 must show deliberate indifference on the part of the school district. *Id.* at 263-64. To establish deliberate indifference, a plaintiff must establish another party's knowledge that a federally protected right is substantially likely to be violated, and failure to act despite that knowledge. *Id.* at 264.

---

[2] Failure to adhere to a procedural requirement under the IDEA does not automatically constitute denial of a FAPE. *See C.M. v. Bd. of Educ. of Union Cty. Reg'l High Sch. Dist.*, 128 F. App'x 876, 881 (3d Cir. 2005). Plaintiffs bear the burden of showing that procedural irregularities resulted in a loss of educational opportunity for the student or meaningful participation in the IEP process for the parents. *Id.*; *see also* 20 U.S.C. § 1415(f)(3)(E)(ii).

II.      **STANDARD OF REVIEW FOR ADMINISTRATIVE PROCEEDINGS**

In considering a challenge to an administrative decision on an IDEA claim, district courts employ a "modified *de novo*" standard of review. *S.H. v. State-Operated Sch. Dist. of City of Newark*, 336 F.3d 260, 270 (3d Cir. 2003). Under this standard, "although the [d]istrict [c]ourt must make its own findings by a preponderance of the evidence," it "must also afford due weight to the [Hearing Officer's] determination." *Shore Reg'l High Sch. Bd. of Educ. v. P.S. ex rel. P.S.*, 381 F.3d 194, 199 (3d Cir. 2004); *see also P.P.*, 585 F.3d at 734. Thus, courts are not free to substitute their own notions of sound education policy for those of the educational agencies they review." *Susan N. v. Wilson Sch. Dist.*, 70 F.3d 751, 757 (3d Cir. 1995). Specifically,

> factual findings from the administrative proceedings are to be considered prima facie correct, and if a reviewing court fails to adhere to them, it is obliged to explain why. In addition, if a state administrative agency has heard live testimony and has found the testimony of one witness to be more worthy of belief than the contradictory testimony of another witness, that determination is due special weight. [T]his means that a [d]istrict [c]ourt must accept the state agency's credibility determinations unless the non-testimonial, extrinsic evidence in the record would justify a contrary conclusion.

*Shore Reg'l High Sch. Bd. of Educ.*, 381 F.3d at 199.

Further, "claims for compensatory education and tuition reimbursement are subject to plenary review as conclusions of law," as are claims regarding the application of the statute of limitations. *P.P. ex rel. Michael P. v. W. Chester Area Sch. Dist.*, 585 F.3d 727, 735 (3d Cir. 2009).  "[W]hether the District fulfilled its FAPE obligations—[is] subject to clear error review as [a] question of fact." *Id.* at 735. Lastly, the burden of proof is on the party bringing the administrative complaint, a burden that continues on appeal. *See L.E. v. Ramsey Bd. of Educ.*, 435 F.3d 384, 391-92 (3d Cir. 2006) (citing *Schaffer v. Weast*, 546 U.S. 49, 62 (2005)).

III.    **PROCEDURAL BACKGROUND**

On January 2, 2018, Plaintiffs filed a due process complaint arguing Defendant failed to offer Zachary a FAPE during his enrollment. (Admin. Rec. Ex. 11.) In their due process complaint, Plaintiffs argued all evaluations performed by Defendant were inadequate, as they failed to fully assess all areas of Zachary's need. (*Id.*) Plaintiffs also alleged that all IEPs developed by Defendant were inadequate, as they contained inappropriate goals which failed to appropriately address all of Zachary's needs, or provide a sufficient and objective means of monitoring progress. (*Id.*) Plaintiffs also alleged the IEPs failed to provide Zachary with a program that allowed him to make meaningful education progress. (*Id.*) Plaintiffs sought compensatory education from Zachary's 2014-2015 school year through the conclusion of his 2016-2017 school year, tuition reimbursement for Zachary's placement at AIM Academy, and reimbursement for an IEE performed by Dr. Kara Schmidt, Ph.D. (*Id.*)

Defendant filed a motion to limit Plaintiffs' claims based on IDEA's statute of limitations. The parties participated in an evidentiary hearing on April 6, 2018 before Pennsylvania Special Education Hearing Officer Brian Jason Ford, Esq. In a decision dated May 3, 2018, Hearing Officer Ford resolved the motion in favor of Defendant and limited Plaintiffs' claims to those arising on or after January 3, 2016. (*See* Pre-Hearing Order, ODR No. 20099-1718KE ("SOL Dec.").)

The parties participated in further evidentiary hearings regarding the merits of Plaintiffs' remaining claims.[3] Hearing Officer Ford issued a decision denying Plaintiffs their requested relief on November 11, 2016 (*See* Hearing Officer's Final Decision and Order, ODR No. 20099-1718KE ("Final Dec.").) Specifically, Hearing Officer Ford found that Defendant provided

---

[3] The parties participated in three additional evidentiary hearings on August 2, 2018, October 1, 2018, and October 12, 2018.

Zachary a FAPE from January 2, 2016 through the start of the 2016-17 school year. (Final Dec.

at 15.)

On February 14, 2019, Plaintiffs initiated this action against Defendant seeking reversal

of the Hearing Officer's decision. ("Compl.," ECF No. 1) On April 23, 2019, Defendant filed its

Answer, denying Plaintiffs' allegations and asserting numerous defenses. (ECF No. 5) On

September 30, 2019, Plaintiffs filed a Motion for Judgment on the Administrative Record. (Plfs.'

Mot.) In their Memorandum of Law in Support of Motion for Judgment on the Administrative

Record, Plaintiffs raise six discrete areas of dispute with Hearing Officer Ford's decision. As

stated by Plaintiffs, these issues are:

A.    The Hearing Officer Erred In Finding Claims Barred By IDEA's Statute Of Limitations,
And This Court Should Reverse That Decision.
B.    The Hearing Officer Erred In Finding That The District Provided Zachary A FAPE
Under IDEA, And This Court Should Reverse That Decision.
C.    Under IDEA, [Plaintiffs] Are Entitled To Reimbursement For Zachary's Placement At
AIM Academy For The 2017-2019 And 2018-2019 School Years, And Until Such Time
As The District Develops And Implements An Appropriate Program For Zachary.
D.    [Plaintiffs] Are Entitled To Reimbursement For The Independent Educational Evaluation
By Dr. Kara Schmidt.
E.    The Hearing Officer Erred By Failing To Rule That The District Violated Section 504.
F.    The Hearing Officer Erred In Failing To Award Compensatory Education And Tuition
Reimbursement Under The ADA.

(Brief in Support of Plfs.' Mot., ECF No. 16)

Defendant filed its own Motion for Judgment on the Administrative Record/Opposition

to Plaintiffs' motion on October 31, 2019. (Def. Mot.) Defendant argues that Hearing Officer

Ford correctly determined the IDEA statute of limitations barred several of Plaintiffs' claims,

and that further, the District provided a FAPE. (*Id*.) Plaintiffs filed a response on November 19,

2019. (ECF No. 20) Both parties submitted additional case law for this Court's consideration.

(*See* ECF Nos. 21, 22)

IV.     **HEARING OFFICER'S DECISIONS**[4]

A.     **Hearing Officer's Factual Findings:**

1.     **2014-2015 School Year (2nd grade)**

Zachary J. started the 2014-2015 school year under an IEP dated June 4, 2014 ("6/4/14 IEP"). (SOL Dec. ¶ 1.) The 6/4/14 IEP included three goals: one targeting Zachary's ability to follow multi-step directions, one targeting his ability to "relate a personal experience with a topic sentence as at least two details," and one targeting his ability to verbally support responses to classroom prompts. (*Id*. ¶ 7.) It included basic Specially Designed Instruction ("SDI"), such as preferential seating, comprehension checks, and extra time on assignments. (*Id*. ¶ 8.) It also called for a small amount of speech and language support. (Id. ¶ 9.) Zachary was found ineligible for Extended School Year ("ESY") services. (Id. ¶ 10.) Plaintiffs attended a meeting and approved the 6/4/14 IEP on the same day. (*Id*. ¶ 2.)

In December 2014, Plaintiffs and Defendant exchanged emails regarding Plaintiffs' concern about Zachary falling behind in writing. (*Id*. at ¶ 11.) Plaintiffs were also concerned about Zachary's off-task behaviors. (*Id*.) Defendant proposed a reevaluation by sending Plaintiffs a Permission to Reevaluate Consent Form, which Plaintiffs returned with a modification to include cognitive and academic assessments. (*Id*. ¶ 12, 13.)

---

[4] In setting forth the following factual background, the Court has reviewed and considered all evidence within the administrative record, including the Hearing Officer's Statute of Limitations Decision and Final Decision, the April 6, 2018 Session I hearing transcript ("Session I Tr."), the August 2, 2018 Session II hearing transcript ("Session II Tr."), the October 1, 2018 Session III hearing transcript ("Session III Tr."), the October 12, 2018 Session IV hearing transcript ("Session IV Tr."), Plaintiffs' exhibits (P1-P26), Defendant's exhibits (S1-S81), and the Independent Educational Evaluation ("IEE") report authored by Dr. Kara Schmidt, Ph.D. This Court finds that Hearing Officer Ford's critical findings of fact are prima facie correct and are supported as a whole by the administrative record.

As to the weight of testimony accorded to each witness who testified, Hearing Officer Ford explained he did not assign them equal weight despite his belief everyone testified truthfully. This Court accepts the Hearing Officer's credibility determinations and finds that no evidence in the administrative record justifies a contrary determination.

On March 9, 2015, Defendant completed the reevaluation report ("3/9/15 RR"). (*Id*. ¶ 16.) The 3/9/15 RR concluded that Zachary continued to qualify for special education as a child with a speech or language impairment without a secondary disability category. (*Id*. ¶ 20.) It included standardized, normative cognitive and achievement tests. (*Id*. ¶ 17.)  Based on those tests, Zachary was considered to have average intellectual ability, and average to above average math, reading, and spelling scores. (*Id*.) However, he was noted to have poor scores on curriculum-based writing assignments, despite achieving "proficient" scores on his report card. (*Id*. ¶ 17.)  The 3/9/15 RR also included a classroom observation and behavior rating. (*Id*. ¶ 18.) Based on the metrics, Zachary was observed to be in the at-risk range for anxiety. (*Id*.)

On April 1, 2015, Defendant sought Plaintiffs' consent to reevaluate Zachary in order to assess additional data regarding his progress in the writing curriculum. (*Id*. ¶ 21.)  Plaintiffs replied on April 5, 2015, expressing concern that the 3/9/15 RR over-estimated Zachary's writing ability, underestimated his ADHD symptoms, and failed to link the two. (*Id*. ¶ 22.)  They noted another name appeared within the 3/9/15 RR, and exhibited concern that the standardized writing assessments did not measure the same skills assessed in the curriculum-based assessments. (*Id*. ¶ 22.)  Plaintiffs were also confused by the discrepancies between scores on Zachary's writing assessments and his report card. (*Id*.) Lastly, Plaintiffs expressed their belief that Zachary should be "diagnosed" as a child with Other Health Impairment ("OHI"). (*Id*. ¶ 23.)

On April 9, 2015, Zachary's IEP team reconvened. (*Id*. ¶ 24.) Defendant offered, and Plaintiffs accepted, an IEP on the same day ("4/9/15 IEP"). (*Id*.)  The 4/9/15 IEP included the same goals as the 6/4/14 IEP, and included one additional goal regarding "use of organizational strategies" prior to writing assignments. (*Id*. ¶ 27.) Plaintiffs wrote Defendant to express their

satisfaction with the April 9, 2015 meeting and Zachary's progress following the 4/9/15 IEP. (*Id*. ¶ 30.)

On May 28, 2015, Defendant updated the existing reevaluation report ("5/28/15 RR"). Defendant specifically considered whether Zachary qualified for special education as a student with OHI, and concluded he was. (*Id*. ¶ 31.) In the 5/28/15 RR, Defendant recommended a continuation of strategies that were already in place at the time through the 4/9/15 IEP. (*Id*.)

In June of 2015, Zachary's IEP team reconvened. (*Id*. ¶ 32.) Defendant issued a revised version of the 4/9/15 IEP to highlight Zachary's writing difficulties, and added a corresponding goal. (*Id*.) Plaintiffs approved the revised IEP on June 3, 2015 ("6/3/15 IEP"). (*Id*.)

## 2.   2015-2016 School Year (3rd grade)

Zachary started the 2015-2016 school year under the 6/3/15 IEP. (Final Dec. ¶ 8.) . Zachary received instruction in written expression in a learning support classroom, and received all other academic instruction in the regular education classroom. (*Id*. ¶ 10, 11.)

Defendant continued to report Zachary's progress towards his IEP goals. (*Id*. ¶ 12.) Regarding Zachary's writing goals, Defendant sent a narrative to Plaintiffs explaining its reports of progress, i.e., what topic Zachary wrote about, how he gained/lost points, and the extent to which Zachary completed the writing assignment without assistance. (*Id*. ¶ 13.).

With the exception of reading, Zachary's academic progress was measured using curriculum-based assessments and reported on report cards. (*Id*. ¶ 15.) Zachary was found to be proficient in most academic domains, and partly proficient in others. (*Id*.) According to his report card, Zachary's reading progress was assessed using the IEP which did not contain a reading goal. (*Id*. ¶ 16.) Zachary's teachers noted his attention issues negatively impacted his reading comprehension. (*Id*. ¶ 14.)

On each report card, Defendant also listed a number of skills under the heading "Social and Work Skills Development." (*Id*. ¶ 17.) For each domain, a teacher could mark a student "consistently meets expectations," "progressing," or "does not meet expectations." (*Id*.) Zachary was marked as "progressing" in all domains in all marking periods, except for "stays on task" and "demonstrates organizational skills." (*Id*.) Zachary was marked as "does not meet expectations" in those domains in all marking periods. (*Id*.)

Zachary had no disciplinary incidents during the 2015-2016 school year. (*Id*. ¶ 18.) However, he still demonstrated difficulty with distractibility, focus, and off-task behaviors. (*Id*.) Those behaviors were not consistent throughout the school year. (*Id*.) Zachary's behavior changed consistent with his medication, and by mid-year, Zachary's behavior and medications had stabilized. (*Id*.)

Zachary's IEP team met on May 12, 2016 for an annual meeting and updated the IEP on the same day ("5/12/16 IEP"). (*Id*. ¶ 19.) In the 5/12/16 IEP, Zachary's present education levels were updated to reflect his progress during the school year up to that point. (*Id*. ¶ 20.) Further, the specially designed instruction category providing for non-verbal cues was edited slightly. (*Id*.) In all other substantive regards, the 6/3/15 IEP and 5/12/16 IEP were identical. (*Id*.)

### 3.    2016-2017 School Year (4th grade)

Zachary began the 2016-2017 school year in a regular education classroom, and received the majority of his education there. (*Id*. ¶ 23.) He received supplemental small group language arts instruction from a special education teacher for approximately 60 minutes per day. (*Id*. ¶ 24.) Zachary also received large group language arts instruction in the regular education classroom from the regular education teacher. (*Id*.)

Zachary's special education teacher continued to monitor Zachary's progress towards his writing goals as stated in the 5/12/16 IEP. (*Id*.) Without changing the IEP, the special education teacher changed Zachary's writing goal to include an additional paragraph in his essays, which would be assessed using 4th grade standards. (*Id*. ¶ 25) The special education teacher told Plaintiffs about these changes, and they did not object. (*Id*.)

In November of 2016, Zachary began expressing disturbing thoughts to Plaintiffs. (*Id*. ¶ 29.) He expressed to his parents he was upset, and that he wanted to start a new life. (*Id*.) This prompted Plaintiffs to contact Dr. Kara Schmidt, Ph.D., a private psychologist, to obtain a neurophysical evaluation. (*Id*. ¶ 30.)

In early 2017, Zachary's IEP team met mid-year to discuss his medication and behavioral changes. (*Id*. ¶ 26.) The team discussed his anxiety and impulsivity control. (*Id*. ¶ 27.) Plaintiffs were informally offered an occupational therapy evaluation and/or placement in a social skills group, but Plaintiffs rejected both. (*Id*.) Plaintiffs indicated their intent on obtaining Dr. Schmidt's evaluation. (*Id*. ¶ 28.) Following the mid-year meeting, the 5/12/16 IEP was not updated. (*Id*. ¶ 26.)

In February of 2017, Dr. Schmidt performed an intake evaluation. (*Id*. ¶ 30.) She conducted several tests on Zachary over the course of two days. (*Id*.) In March of 2017, Dr. Schmidt's associate observed Zachary's classroom. (*Id*.) On May 11, 2017, Dr. Schmidt issued her evaluation (Schmidt Report) and concluded that Zachary met the criteria for ADHD, a specific learning disability in reading fluency and essay writing, and a language disorder. (Admin. Record P-12.) Dr. Schmidt found issues with Zachary's reading comprehension, his writing skills, his organizational skills, and his attention/focus. (*Id*.)

Zachary's IEP team conducted an annual IEP meeting on May 19, 2017. (*Id*. ¶ 32.) The team revised Zachary's IEP to include revisions to his specially designed instruction, and formalized teaching practices already in place during Zachary's instruction ("5/19/17 IEP"). (*Id*. ¶ 33.) Plaintiffs provided Defendant a copy of the Schmidt Report, but it was not reviewed substantively at the meeting. (*Id*. ¶ 32.)

In June of 2017, Zachary was admitted to AIM Academy. (*Id*. ¶ 36.) On June 12, 2017, Plaintiffs rejected the 5/19/17 IEP. (*Id*. ¶ 35.) Zachary's IEP team reconvened, and Defendant proposed several revisions to his 5/19/17 IEP. (*Id*. ¶ 37.) These revisions focused on improving Zachary's executive functioning skills by placing him in a small group several times a week. (*Id*. ¶ 38.) Plaintiffs again rejected this revised IEP, and provided written notice of their intent to place Zachary at AIM Academy. (*Id*. ¶ 39.)

Zachary's report card at the end of the 2016-2017 school year reflected similar grades and evaluations as those in the 2015-2016 school year. (*Id*. ¶ 40.) Zachary was marked as proficient in most academic subjects, partly proficient in others, and advanced in a few. (*Id*.) Further, Zachary was marked as either "progressing" or "meets expectations" in all social and work skills development domains. (*Id*.) Defendant also tracked Zachary's progress in achieving his writing goals. (*Id*. ¶ 41.) Zachary consistently met the expectations established in the IEP. (*Id*.) However, it was noted he consistently found the task difficult or overwhelming. (*Id*.) Zachary's teachers continued to attribute Zachary's writing difficulties to his ADHD symptoms, rather than a writing disability itself. (*Id*.)

**B.     Hearing Officer's Legal Conclusions:**

**1.     SOL Decision**

Hearing Officer Ford limited Plaintiffs claims to those accruing before January 2, 2016, or two years before Plaintiffs filed their due process complaint. (SOL Dec. page 1) Specifically, Hearing Officer Ford concluded Plaintiffs' complaints regarding the following were barred based on timeliness: the 3/9/15 RR, the 5/28/15 RR, the 6/4/14 IEP, the 4/9/15 IEP, and the 6/3/15 IEP. (*Id*.)

Hearing Officer Ford first addressed the 3/9/15 RR and the 5/28/15 RR, and determined Plaintiffs knew or should have known of an alleged violation of the statute on the day the reports were issued. (*Id*. page 7) Upon receipt of the 3/9/15 RR, Plaintiffs wrote to express their concern regarding the comprehensiveness of the evaluation. (*Id*.) The 5/28/15 RR was completed in response to Plaintiffs' concern. (*Id*.) Hearing Officer Ford determined that upon receipt of the 5/28/15 RR, Plaintiffs "were in a position to determine whether the 5/8/15 RR corrected the concerns they raised after receiving the [3/9/15 RR]." (*Id*.) Thus, since Plaintiffs knew of the alleged violation on the date that the reports were issued, Hearing Officer Ford found the claims untimely. (*Id*.)

Hearing Officer Ford also determined Plaintiffs' claims regarding the 6/4/14 IEP, 4/9/15 IEP, and the 6/3/15 IEP were untimely. (*Id*.) He explained that Plaintiffs expressed concerns about Zachary's abilities while the 6/4/14 IEP was being implemented, and while the 4/9/15 IEP was being developed. (*Id*.) Further, Plaintiffs demonstrated their concern about Zachary's writing abilities, ADHD symptoms, and anxiety all throughout the 2014-2015 school year. (*Id*.) At the latest, Plaintiffs should have known about Defendant's alleged violations when they received the 6/3/15 IEP since at that point, Plaintiffs had expressed concerns that were not necessarily

reflected in the IEPs. (*Id*. page 8) Hearing Officer Ford thus concluded Plaintiffs knew what services the IEPs did and did not offer at the time they were issued, and were in a position to timely raise concerns about Zachary's needs. (*Id*.)

In regards to Plaintiffs' claims that Defendant inadequately implemented existing IEP speech therapy goals, Hearing Officer Ford determined Plaintiffs failed to satisfy their burden. While Defendant only vaguely articulated each goal, Plaintiffs failed to put forth a preponderance of the evidence demonstrating the facts underlying the alleged violation, and when Plaintiffs learned of them. (*Id*.)

Hearing Officer Ford also disposed of Plaintiffs' claims regarding Defendant's failure to offer ESY services to Zachary. (*Id*.) He found that Plaintiffs failed to establish when they knew or should have known that Zachary was entitled to, but did not receive, ESY programming. (*Id*.) Since the 6/4/14 IEP and 4/9/15 IEP stated Zachary did not qualify for such services, and Plaintiffs were imputed with the knowledge of the contents of those IEPs on the date they were issued, Hearing Officer Ford determined Plaintiffs knew or should have known of an alleged violation on 4/9/15 at the latest. (*Id*.)

## 2.    Final Decision

Hearing Officer Ford concluded that at all relevant times, Defendant provided Zachary a FAPE. (Final Dec. page 15) He further found Plaintiffs were not entitled to tuition reimbursement since Defendant offered Zachary appropriate programming. (*Id*.)

Preliminarily, Hearing Officer Ford gave little weight to the Schmidt Report. (*Id*. page 10.) He pointed to the fact that Dr. Schmidt failed to ask Zachary's teachers about the learning programs with which he was involved. (*Id*.) His teachers would have likely linked Zachary's problems to his problems with attention and focus. (*Id*.) He further concluded that Dr. Schmidt

did not adequately address how Zachary's attention and focus problems may have impacted his testing and highlighted the fact that Dr. Schmidt herself found that Zachary's attention and focus may have brought down his test scores. (*Id*.) Hearing Officer Ford also concluded that the Schmidt Report did not reveal any new areas of deficiency of which Defendant was unaware, as Dr. Schmidt found Zachary's writing, reading comprehension, attention, and focus to be problematic. (*Id*.) Lastly, Hearing Officer Ford afforded little weight to the Schmidt Report because it never addressed Zachary's strong academic performance and his improvement over time with the supports provided by Defendant. (*Id*.)

Hearing Officer Ford found Defendant provided a FAPE to Zachary between January 2016 and the end of the 2015-2016 school year. (*Id*. page 11.) Hearing Officer Ford found Defendant provided services to Zachary in order for him to progress academically, such as small group instruction for writing and good teaching practices in a co-taught regular education classroom. (*Id*.) Further, Defendant provided necessary accommodations for Zachary to make meaningful progress in reading tasks, though his performance was hindered by his ADHD symptoms. (*Id*.) Hearing Officer Ford also determined Zachary's behavior also indicated his continued improvement. (*Id*.) Even though Zachary exhibited some school-related anxiety, Hearing Officer Ford determined there was an equal amount of evidence he thrived socially in school. (*Id*. page 12.) Since Zachary made meaningful progress throughout the school year, Hearing Officer Ford determined it was appropriate that no changes were made to Zachary's IEP or the existing evaluation report. (*Id*.)

Hearing Officer Ford also found Defendant provided a FAPE to Zachary during the 2016-2017 school year. (*Id*.) He determined Zachary advanced through a regular education curriculum with nothing more than accommodations provided in the IEP and good teaching

practices. (*Id*.) Neither his anxiety nor his ADHD-related behaviors impeded his academic

progress. (*Id*. page 13) Zachary had minimal negative social interactions and did not require

significant intervention. (*Id*.) Because of Zachary's actual progress, Hearing Officer Ford

determined there was no evidence Defendant should have reevaluated his IEPs. (*Id*.)

Hearing Officer Ford determined Defendant committed two procedural violations. (*Id*.)

First, Zachary's IEP included an outdated goal regarding Zachary's writing. (*Id*.) Zachary's

teacher continued with writing goals designed to advance Zachary's mastery of new skills not

included in the IEP. (*Id*.) Defendant could have changed the 5/12/16 IEP to reflect the change at

any time, but failed to do so. (*Id*.)  However, Hearing Officer Ford found Plaintiffs were aware

of the new goal implemented by Zachary's teachers and outdated goal appearing on the IEP. (*Id*.)

Second, Defendant failed to offer Plaintiffs a neurophysical evaluation in writing. (*Id*.

page 14.) Hearing Officer Ford determined the evidence demonstrated unequivocally that

Zachary expressed suicidal thoughts in November 2016. (*Id*.) After Defendant became aware of

the serious problem, they convened a mid-year meeting where the parties considered a

neurophysical evaluation, an evaluation by an occupational therapist, and placement in a social

skills group. (*Id*.) Even though Plaintiffs declined Defendant's offer in order to obtain its

evaluations independently, Defendant never generated the appropriate paperwork necessary to

comply with IDEA mandates. (*Id*.)

V.     **DISCUSSION**

   A.     **Hearing Office Ford correctly limited Plaintiffs' claims based on the "knew
          or should have known" date.**

Preliminarily, Plaintiffs argue Hearing Officer Ford applied the incorrect rule of law in

determining the date Plaintiffs knew or should have known a violation of the IDEA statute

occurred. (Brief in Support Plfs' Motion page 9.) Plaintiffs assert Hearing Officer Ford

incorrectly focused on determining the date each alleged violation first occurred. (*Id*.) This Court disagrees with Plaintiffs' assertion and finds that Hearing Officer Ford directed his inquiry appropriately.

In *G.L. v. Ligonier Valley Sch. Dist. Auth.*, 802 F.3d 601 (3d Cir. 2015), the Third Circuit explained that under Section 1415(f)(3)(C), an IDEA plaintiff must request a due process hearing within two years of the date the plaintiff "knew or should have known" of the alleged violation. This date is triggered by the date of *discovery* of the violation, rather than the date of its *occurrence*. (*Id*. at 614.) In the SOL Decision, Hearing Officer Ford specified his focus into both the date an alleged violation occurred, as well as the date Plaintiffs were imputed with the knowledge of its occurrence. (SOL Dec. page 2) Hearing Officer Ford acknowledged that "more is needed to start the two year clock" than simply the action forming the basis of an IDEA due process complaint. (*Id*. (citing *E.G. v. Great Valley Sch. Dist.*, No. 16-5456, 2017 WL 2260707 (E.D. Pa. May 23, 2017)). However, sometimes "knowledge of the action and knowledge of the violation 'can happen on the same day or be spread over months or years.'" (*Id*. (quoting *id*. at *22)). Applying this standard, Hearing Officer Ford concluded Plaintiffs became aware of the IDEA statute's violation on the day the violation occurred. Hearing Officer Ford's recitation of the law, and its application to his findings of fact, comport with our understanding of the IDEA statute of limitations.

Second, Plaintiffs maintain Hearing Officer Ford erred in concluding Plaintiffs' claims arising before January 2, 2016 were barred by IDEA's statute of limitations. (Brief in Support Plfs' Motion page 10.) Plaintiffs argue the Hearing Officer erred in determining they knew or should have known Zachary's rights were allegedly violated on the date the violation occurred. (*Id*.) Put differently, Plaintiffs argue they didn't know they had a claim regarding the two

reevaluation reports and three IEPs on the date Defendant gave them to Plaintiffs. (*Id*.) Rather, Plaintiffs argue they became aware of Zachary's denial of a FAPE in November of 2016 when he began expressing frustration with his school or, at the latest, when they received the results of Dr. Schmidt's IEE on May 11, 2017.[5] (*Id*. page 13.) Plaintiffs argue that prior to those dates, they had no reason to question the appropriateness of Zachary's education because Defendant continued to tell them Zachary was doing well despite his issues with attention and focus. (*Id*.)

An examination of the record supports the conclusion that Plaintiffs knew or should have known a violation of Zachary's rights occurred on the dates set forth on his evaluation reports and IEPs. Plaintiffs were actively involved in Zachary's education, and were consistently aware of the programming he was receiving. Regarding the 3/9/15 RR and the 5/28/15 RR, the evidence demonstrates Plaintiffs were aware of any perceived shortcomings in Defendant's evaluations. Plaintiffs specifically wrote to Defendant expressing their concern about the 3/9/15 RR, noting that the standardized writing assessments did not measure the same skills assessed in the curriculum-based assignments. (Admin. Record S-29.) Plaintiffs also noted the discrepancies between scores on writing assignments and report cards, and questioned whether Zachary should be "diagnosed" with OHI. (*Id*.) Later, Defendant issued the updated reevaluation report on 5/28/25, which addressed several of Plaintiffs' stated concerns and recommended the continuation of an IEP already in place. By Zachary's father's own testimony, Plaintiffs discussed the contents of the evaluation reports upon receiving them from Defendant, and were aware of the education plan each evaluation report recommended. (*See* Session I Tr. at 62-63

---

[5] Plaintiffs also summarily assert the Hearing Officer erred in determining Plaintiffs bore the burden of proof in establishing the "knew or should have known date." (Brief in Support of Plfs' Motion page 6.) However, Plaintiffs fail to set forth any further argument and as a result, the this Court does not address this issue.

("Q: And with the various reevaluation reports . . . [d]o you recall you would have read them, discussed them with your wife and did whatever you did with them, correct? A: Yes.").)

The same is true regarding the 6/4/14 IEP, the 4/9/15 IEP, and the 6/3/15 IEP. The record demonstrates that Plaintiffs knew or should have known of any alleged violations on or soon after the date Plaintiffs received each respective IEP. Plaintiffs were very engaged and aware of the contents of each, and continuously communicated with Defendant. Following the 6/4/14 IEP, Plaintiffs spoke to Defendant about Zachary's off-task behaviors and their concern he was falling behind in writing. (Admin. Record S-21.) Following the 4/9/15 IEP and the 6/3/15 IEP, Plaintiffs communicated with Defendant regarding Zachary's progress and approved the contents of both. (*Id*. S-33, S-28.) Again, the evidence of record shows that Plaintiffs were consistently aware of the contents of each IEP and how it progressed Zachary's education. (*See* Session I Tr. at 62 ("Q: And when you received these various IEPs we looked at . . . would you and your wife look them over and read them and review them and discuss them? A: Yes.").)

Since Plaintiffs filed their due process complaint on January 2, 2018, Hearing Officer Ford did not err in determining the claims arising before January 2, 2016 were untimely. Claims premised upon the IDEA are "not subject to the continuing violation or equitable tolling doctrines, but instead can be extended only for one of the enumerated statutory exceptions." *Baker v. S. York Area Sch. Dist.*, No. 08-1741, 2009 WL 4793954 *5 (M.D. Pa. Dec. 8, 2009); *see also Evan H. v. Unionville-Chadds Ford Sch. Dist.*, No. 07-4990, 2008 WL 4791634 *5 (E.D. Pa. Nov. 4, 2008); *J.L. v. Ambridge Area Sch. Dist.*, 622 F. Supp. 2d 257, 269 (W.D. Pa. Feb. 22, 2008). Notably, Plaintiffs did not set forth any argument regarding any of the enumerated statutory exceptions, nor do they in their currently briefing. Plaintiffs have not set

forth a persuasive argument regarding Hearing Officer Ford's alleged error, nor does a review of his conclusions reveal one.

### B. Hearing Officer Ford correctly concluded Defendant provided Zachary a FAPE.

Plaintiffs argue Hearing Officer Ford erred in determining that Zachary was provided a FAPE from January 2, 2016 until the time he was placed in AIM Academy. (Brief in Support Plfs' Motion pages 13-22.) Plaintiffs argue his IEPs contained inadequate present education levels and inappropriate goals which failed to address all of Zachary's needs. (*Id*. page 14.) Plaintiffs allege the IEPs failed to address his problems with reading, and included inadequate SDIs which failed to provide, *inter alia*, adequate support for Zachary's executive functioning deficits, his needs stemming from anxiety, and appropriate behavioral supports. (*Id*.) Despite expressing concern regarding his anxiety, attention/focus, and executing functioning, Plaintiffs claim Defendant never properly evaluated his needs. (*Id*. page 17.) Plaintiffs suggest they are eligible to receive compensatory education as an equitable remedy. (*Id*. page 21.)

As outlined above, an IEP must be "reasonably calculated to enable the child to make progress appropriate in light of [the child's] circumstances*." Endrew F. v. Douglas County Sch. Dist. RE-1*, 137 S. Ct. 988, 1002 (2017). Since progress for one student is different than progress for another student, an IEP must be "constructed only after careful consideration of the child's present levels of achievement, disability, and potential for growth." *Id*. at 999. "[A] school district is not required to provide a specific program or employ a specific methodology requested by the parent." *T.M. v. Quakertown Community Sch. Dist.*, No. 16-3915, 251 F.Supp.3d 792, 800 (E.D. Pa. April 9, 2017) (citing *Bd. of Educ. of Hendrick Hudson Central Sch. Dist., Westchester Cty. v. Rowley*, 458 U.S. 176, 199 (1982)). The adequacy of an IEP turns on the "unique circumstances of the child for whom it was created." *Endrew F.*, 137 S. Ct. at 1001. Although an

IEP must provide a student with a "basic floor of opportunity," it does not have to provide "the optimal level of services," or incorporate every program requested by the child's parents. *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 564 (3d Cir. 2010); *see also Bd. of Educ. v. Diamond*, 808 F.2d 987, 991 (3d Cir. 1986) (stating that an IEP must be "likely to produce progress, not regression or trivial educational advancement.").

Further, an IEP is not to be judged with the benefit of hindsight; the appropriateness of the IEP is judged as of the time it was developed. *Furhmann v. E. Hanover Bd. of Educ.*, 993 F.2d 1031, 1040 (3d Cir. 1993); *see also Carlisle Area Sch. v. Scott P.*, 62 F.3d 520, 530 (3d Cir. 1995). Thus, a court should determine the appropriateness of an IEP by evaluating the evidence acquired subsequently to the creation of an IEP in order to determine the reasonableness of the school district's decision at the time the IEP was made. *Bayonne*, 602 F.3d at 564. "Any review of an IEP must appreciate that the question is whether the IEP is reasonable, not whether the court regards it as ideal." *Endrew F.*, 137 S. Ct. at 1000 (citing *Rowley*, 458 U.S. at 206–07).

This Court agrees with Hearing Officer Ford that Zachary was provided a FAPE from January 2, 2016 through the 2016-2017 school year. Zachary's progress indicated that the IEPs in place were working as expected. During the creation of the 5/12/16 IEP, Zachary was making progress under the existing IEP's goals. Zachary's writing consistently improved throughout the year, as he scored satisfactorily based on the previous IEP's goals. By the end of the year and close to the time the 5/12/16 IEP was being contemplated, Zachary's reading was approaching grade-level expectations. He was able to achieve proficient or partially proficient scores in most academic domains, and his "Social and Work Skills Development" scores indicated he was progressing in nearly all categories. Thus, during the creation of the 5/12/16 IEP, many of Zachary's goals stayed the same in order to foster the progress he was experiencing.

The only areas that were amended in the 5/12/16 IEP were Zachary's present education level and his SDIs. Plaintiffs argue generally that Zachary's IEPs were deficient in both these categories, but this Court fails to see how they could have been supplemented in the 5/12/16 IEP, given the information before those crafting the 5/12/16 IEP. Both Zachary's regular education and special education teacher testified to reviewing Zachary's progress before the IEP meeting, and both testified Zachary was doing well. Zachary's regular education teacher testified he felt Zachary had made advancements throughout the year. (Session III Tr. page 465 ("I felt I saw improvement from where he was when he came in, to where he ended.").) Zachary's special education teacher testified she prepared for the IEP meeting by reviewing her progress monitoring notes, his benchmarks, and his previous SDI in order to assess whether any changes needed to be made. (Session III Tr. page 242.) She testified that by the end of his third grade year, "I think that [Zachary's teachers and parents] worked pretty well together trying to get a program together for him." (Session II Tr. page 246.) This Court agrees with Hearing Officer Ford's assessment that Zachary's IEPs were working as expected and therefore did not require the kind of overhaul Plaintiffs suggest.

The same is true for the two subsequent IEPs Plaintiffs rejected. On May 19, 2017, when Zachary's IEP team convened to create a new IEP at the end of his 2016-2017 school year, Zachary was achieving marks like those he earned during the prior school year. Zachary's writing goal, now judged by a fourth grade standard, also continued to progress with the help of the Language Arts pull-out. By the end of the school year, Zachary had progressed through the curriculum satisfactorily with SDIs crafted by the IEP team such as small group instruction, extra time to complete assignments, and good teaching practices.

Of course, Zachary's academic advances cannot be separated from the episodes of anxiety, which culminated in the events of November of 2016.  "In the context of the IDEA, 'education' extends beyond discrete academic skills and includes the social, emotional, and physical progress necessary to move the child toward meaningful independence and self-sufficiency consistent with the child's cognitive potential." *Sean C. v. Oxford Area School District*, No. 16-5286, 2017 WL 3485880 *8 (E.D. Pa. Aug. 14, 2017) (quoting *M. v. Penn Manor Sch. Dist.*, No. 12-3646, 2015 WL 221086 *4 (E.D. Pa. Jan. 14, 2015)). Hearing Officer Ford concluded Zachary's difficulties with anxiety were related to his changes in ADHD medication, rather than the existing IEP. After hearing about Zachary's expression of suicidal thoughts in November of 2016, Defendant informally offered evaluations and placement in social skills groups which Plaintiffs declined. Despite declining the extra accommodations, Zachary still progressed through the curriculum and achieved scores similar to those the prior year. Thus, Defendant's decision to keep the 5/19/17 IEP substantially similar to the preceding IEP was appropriate. This Court agrees with Hearing Officer Ford that Defendant continued to confer a meaningful educational benefit, given the forward progress Zachary's IEPs were constructed to advance.

Plaintiffs argue that the Schmidt Report paints an entirely different picture of the education Zachary was supposed to be receiving. (Brief in Support of Plfs' Motion page 15-16.) Plaintiffs contend that the Schmidt Report revealed Zachary had significant needs which went "woefully unaddressed." (*Id*. page 17.) Hearing Officer Ford gave little credibility to the report, and this Court is constrained to agree. Plaintiffs do not set forth evidence necessary to disturb Hearing Officer Ford's decision.

A review of the Schmidt Report reveals that Zachary had problems with writing, reading comprehension, attention, and focus. Dr. Schmidt opines that Zachary meets the criteria for ADHD due to his symptoms of disorganization, distractibility, and inattention, and that he requires "[SDI] for his attention/executive delays and the ways in which they impede his learning." (Admin. Rec. P-12 page 20.) She further opines that he meets the criteria for a specific learning disability in reading fluency and essay writing/written language organization. Dr. Schmidt recommended Zachary receive SDI instruction "to learn ways to organize his ideas when writing thoughts, sentences, or stories on paper." (*Id*. page 21.) She also recommended Zachary be allowed extra time to allow for his "variable visual attention and working memory weakness." (*Id*.) As Zachary's attention improves, Dr. Schmidt opines "his comprehension may also improve if he is able to focus carefully on the material that he reads." She further recommends Zachary receive assistance with regard to the organization and execution of multistep projects. (*Id*. page 22.)

This Court agrees with Hearing Officer Ford's conclusion that many of Zachary's educators were aware of the learning difficulties revealed in the Schmidt Report. (*See* Session II Tr. at 248 (Holleran) ("Q: And if I understand you correctly, from your perspective Zachary's biggest issue was his attention, focus, staying on task, those kinds of things? A: Yes."); Session II Tr. at 325-326 (Watson) ("A: So what we put in the SDIs, I would say we try to make sure that that's something that is specific for that child that they truly need to help them to be successful . . .. Q: So it sounds like then a lot of the things that were helpful to Zach were those common practices in the classroom, whether the regular ed or learning support classroom, is that fair to say? A: Yes. He would just need some more adult support in order to fully achieve what he needed to, depending on the task."); Session III Tr. at 447 (Kane) ("Q: So, if you were to think

back [to] what his educational needs were at that time, how would you summarize his needs? A: Some extra support in reading. And again, the attention, the focus, was where he needed some extra support, as well.").) Many of these known problems were already being addressed through Zachary's SDIs. For example, SDIs in both the 6/3/15 IEP and the 5/12/16 IEP, included "praise for on-task behavior, focus, and completion of tasks," "preferential seating in close proximity to teacher," "use of organizational strategies prior to writing pieces," and "frequent check-ins for comprehension of directions and for on-going focus during tasks, through completion of assignments." (Admin. Rec. P-8, P-9.) Zachary's teachers testified that his difficulties were related to his ADHD symptoms, and would improve as his attention and focus improved. (*See* Session III Tr. at 446 (Kane) ("Q: So you mentioned attention and focus. How did that relate to what you described as the assistance he needed for reading? A: Zach needed prompting, I felt like to kind of get back, you know, look back at the passage if we were reading. Just redirection, I feel like most of the time."); Session II Tr. at 339 (Watson) ("Q: My understanding is that from your perspective, the School District's perspective, in the area of reading Zach did not necessarily need special education services, correct? A: Correct. From some of our assessments, ones that he did one-on-one with me as well as in small-group sessions, Zach was showing that he was reading on grade level . . . longer reading assessments that were district reading assessments that we would provide to Zach, he struggled with those, but that seemed to be due to his attention and his focus due to it being a longer assignment.").)

In addition to reviewing the contents of the Schmidt Report, Hearing Officer Ford heard testimony from Dr. Schmidt, as well as many of Zachary's teachers. "A court must accept a hearing officer's credibility determinations unless nontestimonial, extrinsic evidence of record would justify a contrary conclusion or 'unless the record read in its entirety would compel a

contrary conclusion.'" *Jana K. ex rel. Tim K. v. Annville-Cleona Sch. Dist.*, 30 F.Supp.3d 584, 594 (E.D. Pa. Aug. 18, 2014) (citing *S.H. v. State-Operated Sch. Dist. of City of Newark*, 336 F.3d 260, 269 (3d Cir. 2003)). Hearing Officer Ford found Dr. Schmidt's understanding of the programs in which Zachary was enrolled to be considerably different from the teacher's descriptions of the programs. Further, he found Dr. Schmidt's failure to consult Zachary's teachers to weigh against the credibility of her testimony. The record reveals multiple points in her testimony in which she admits Zachary's teachers had little to no input regarding the information used in the creation of the Schmidt Report. (Session IV Tr. at 523 ("Q: And did you get any input from Zachary's teachers? A: In addition to the record review, a classroom observation was conducted, and behavior rating scales were collected."); Session IV Tr. at 578 ("Q: You didn't ask anyone about the curriculum and activities inherent in the classroom, correct? A: That is correct.").) This Court finds no reason to undermine Hearing Officer Ford's credibility determination, as the record reveals no evidence of record which justifies a contrary conclusion. *See Shore Regional High Sch. Bd. of Educ. v. P.S. ex rel. P.S.*, 381 F.3d 194, 199 (3d Cir. 2004) (administrative findings of fact are entitled to due weight and must be considered prima facie correct while credibility findings regarding the live testimony presented at the hearing are entitled to "special weight.").

Plaintiffs request compensatory education as an equitable remedy for the time Zachary was denied a FAPE. The IDEA grants district courts broad discretion in fashioning a remedy for a denial of a FAPE. *See* 20 U.S.C. § 1415(i)(2)(c)(iii) (stating that the court "shall grant relief as the court determines is appropriate"). Determining what relief is warranted is a case by case analysis under which the "court will evaluate the specific type of relief that is appropriate to ensure that a student is full compensated for a school district's past violations of his or her rights

under the IDEA." *Ferren C. v. Sch. Dist. of Phila.*, 612 F.3d 712, 720 (3d Cir. 2010). In this case, since this Court has determined Hearing Officer Ford did not err in determining Zachary received a FAPE, no compensatory education need be awarded.

    **C.**    **Plaintiffs Are Not Entitled to Tuition Reimbursement for Zachary's Placement at AIM Academy.**

Plaintiffs seek tuition reimbursement for Zachary's education at AIM Academy. (Brief in Support of Plfs' Motion pages 22-32.)  This Court employs the *Burlington-Carter* test in order to determine whether parents are entitled to reimbursement for their child's education in private school. *See Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359 (1985); *Florence Cty. Sch. Dist. Four v. Carter*, 510 U.S. 7 (1993). Under the test, Plaintiffs must demonstrate that: (1) the public school did not provide their child a FAPE; (2) placement in the private school instead of the public school was proper; and (3) the equities weigh in favor of reimbursement. Since Plaintiffs fail to establish Hearing Officer Ford erred in determining Zachary was denied a FAPE, their claims for tuition reimbursement are denied.

    **D.**    **Plaintiffs Are Not Entitled to Reimbursement for the Independent Educational Evaluation Performed by Dr. Kara Schmidt, Ph.D.**

Plaintiffs state they are entitled to reimbursement for the IEE conducted by Dr. Kara Schmidt, which resulted in the Schmidt Report. (Brief in Support of Plfs' Motion pages 32-35.) Under IDEA, parents may obtain an IEE at public expense if the parent disagrees with a District's evaluation. 20 U.S.C. § 1415(b)(1); 34 C.F.R. § 300.502(b)(1). When a parent disagrees with a district's evaluation, the parent will first request an independent evaluation from the district, who is then responsible for ensuring an evaluation is provided at public expense. 34 C.F.R. § 300.503(b)(2)(ii). Once a parent expresses disagreement, a district may fund an

independent evaluation, or request a due process hearing to defend the appropriateness of its own evaluation. *Id*.

Hearing Officer Ford denied Plaintiffs' request for reimbursement for the Schmidt Report. In the Final Decision, he finds that Plaintiffs declined Defendant's offer to perform an evaluation, "preferring to obtain a neurophysical evaluation independently." (Final Dec. page 13.) Further, "[Plaintiffs] had already reached out to [Dr. Schmidt], and were intent to pursue that path." (*Id*.) Though Hearing Officer Ford determined Defendant's failure to document its offer to reevaluate Zachary was a procedural violation, he determined "there was no ambiguity that [Plaintiffs] rejected [Defendant's] offer and were pursuing their own evaluation." (*Id*. at page 14.)

From Hearing Officer Ford's decision, this Court gleans his denial to rest on his finding of fact that Plaintiffs never requested a publicly funded IEE, and sought the IEE outside the collaborative process. This Court finds no clear error in Hearing Officer Ford's determination. Parents may not recover for an IEE "where it is sought outside the proper channels, i.e. without allowing the District to challenge the decision in a due process hearing." *R.F. v. Southern Lehigh Sch. Dist.*, No. 18-1756, 2019 WL 3714484 *20 (E.D. Pa. Aug. 7, 2019); see also Benjamin A. v. Unionville-Chadds Ford Sch. Dist.*, No. 16-2545, 2017 WL 3482089 (E.D. Pa. Aug. 14, 2017) (denying reimbursement for an IEE where parents unilaterally contacted Dr. Schmidt before discussing evaluation with school district). Plaintiffs do not contest that they did not consult Defendant before unilaterally pursuing the evaluation with Dr. Schmidt. The timeline of their actions suggests their intent to independently pursue the IEE, rather than doing so in conjunction with Defendant. In fact, the record suggests that the evaluation was sought for the purpose of providing additional evidence that Defendant's services were inadequate. (Session II Tr. page

118 ("The School was not working for him in its current state. We needed to have him evaluated to see what was going on, and so we engaged Dr. Schmidt to do a neuropsych eval.".) Thus, since Hearing Officer Ford did not clearly err, Plaintiffs are not entitled to reimbursement under these circumstances.

     **E.**     **Hearing Officer Ford Committed No Error in Denying Claims Brought Under Section 504/ADA.**

Plaintiffs argue that Hearing Officer Ford erred when he denied their claims under Section 504 and the ADA. (Brief in Support of Plfs' Motion pages 35-38.) To obtain relief under Section 504, the evidence must show that a student with a disability, who was otherwise qualified to participate in a program offered by a recipient of federal funding, was denied the benefits of the program or was otherwise subject to discrimination. *S.H. v. Lower Merion Sch. Dist.*, 729 F.3d 248, 261 (3d Cir. 2013). A similar standard governs both Section 504 and the ADA. *Chambers v. Sch. Dist. of Phila. Bd. Of Educ.*, 587 F.3d 176, 189 (3d Cir. 2009). In this instance, Plaintiffs failed to establish that Zachary was denied a FAPE. The administrative record fails to establish that any benefits were denied or that discrimination occurred. For these reasons, Plaintiffs' Section 504 and ADA claims fail.

**VI.**    **CONCLUSION**

For the reasons explained above, Plaintiffs' Motion for Judgment on the Administrative Record is denied, and Defendant's Motion for Judgment on the Administrative Record is granted.